STATE of Arkansas *v.* Steve RISINGER

CR 88-129                                    762 S.W.2d 787

Supreme Court of Arkansas
Opinion delivered January 9, 1989

406

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellant.

*David H. Williams*, for appellee.

TOM GLAZE, Justice. Appellee is charged with one count of felony possession of a controlled substance (cocaine) and two misdemeanor counts of possession of a controlled substance (marijuana and valium). The contraband involved was seized by three police officers when they executed several outstanding felony warrants on appellee at his apartment. At trial, appellee moved to suppress the evidence, and the trial court granted the motion finding that the officer, who actually discovered the evidence, was impermissibly in appellee's apartment when the marijuana and cocaine were found. Pursuant to A.R.Cr.P. Rule 36.10(a)(1), the state brings this interlocutory appeal to challenge the trial court's order granting appellee's motion. We reverse the trial court's ruling concerning the cocaine and marijuana but uphold its decision to suppress the valium.

On the evening of September 3, 1987, the three police officers went to arrest appellee at his apartment. Two officers, Hutson and Siegler, appeared at the front door, and Officer King went to the rear of the apartment to secure its back door. The two officers knocked at the front door, and appellee opened it. After the officers identified themselves and told appellee that he was wanted by the El Dorado Police Department, appellee invited the officers into the foyer of the apartment and explained to them that police departments sometimes get him and his cousin mixed up. Because the foyer area was small, the two officers and the appellee stepped into the living room area to further discuss and effect the appellee's arrest. In addition, the appellee had apparently asked to put on his shoes, which were located in the living room. Officer King was on the patio immediately outside the sliding door of the

living room, so when the officers entered the room, they were able to allow King to enter. Apparently from his position outside the patio door, Officer King observed an ash tray containing a hemostat holding a cigarette. After entering the living room, King went over to the hemostat and cigarette on top of a coffee table, and at that time, he saw a glass tray with a straw and razorblade protruding from under a couch. When he pulled the tray all the way out, King saw that it had white powder residue, which was confirmed to be cocaine. On the same tray, King also found a "bunch of marijuana" and cigarette papers that were used to roll marijuana. One of the other officers subsequently discovered a curio box, which, when opened, was found to contain three valium pills.

Appellee argues the trial court was correct in suppressing the contraband found in the living room of his apartment because the officers', especially King's, intrusion into that room was not legally justified. We cannot agree.

Appellee in no way questions the validity of the felony warrants the officers executed on him. It is clear that, for fourth amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. *Payton* v. *New York*, 445 U.S. 573 (1980). In the present case, Officers Hutson, Siegler and King knew appellee was in his apartment, and in addition, appellee invited Hutson and Siegler into the apartment. The officers, once properly in appellee's apartment to effect his arrest, could monitor appellee's movements in order to ensure their safety — *as well as the integrity of the arrest. Washington* v. *Chrisman*, 455 U.S. 1 (1981). The *Washington* holding also established that the absence of an affirmative indication that an arrested person might have a weapon available or might attempt to escape does not diminish the arresting officer's authority to maintain custody over the arrested person. *Id.* Also, important to resolving the seizure issue raised here, we note that the *Washington* decision provided that the "plain view" exception to the fourth amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be.

■ Appellee argues that, unlike Officers Hutson and Siegler, King was uninvited and impermissibly in the apartment when he discovered the cocaine and marijuana. Appellee's argument totally ignores the fact that all three officers were at the appellee's apartment to execute the outstanding arrest warrants and that King was only at the back door to ensure the appellee could not escape. King's role in securing and entering the back door was a reasonable one, which was designed to ensure appellee's arrest. As noted earlier, the back door, through which King entered, was off the living room, where the appellee and Officers Hutson and Siegler had gone to talk and to permit appellee to put on his shoes. Because we hold that King gained lawful access to appellee's area of privacy, *viz.*, his living room, we further conclude that the incriminating evidence which fell within the plain view of King permitted him to seize it. Here, King's testimony clearly reflects that he recognized the hemostat, razorblade and straw to be paraphernalia used in connection with the marijuana and cocaine which he found and properly seized. Accordingly, we hold the trial court erred in failing to admit the marijuana and cocaine into evidence.

■ We reach a different holding concerning the three valium pills contained in the small box found by Officer Siegler. The box was located on the coffee table where the hemostat was found, and Siegler had to open the box to discover the pills. Obviously, the pills were not in plain view, and the officers' seizure of them must be premised on some other legal theory in order to permit the state to introduce them into evidence.

In *Chimel* v. *California*, 395 U.S. 752 (1969), the Supreme Court discussed the "search incident to arrest" principle and noted its proper extent as follows:

> [W]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to

grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. *There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.*

*There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well recognized exceptions, may be made only under the authority of a search warrant.* The "adherence to judicial processes" mandated by the Fourth Amendment requires no less. (Emphasis added.)

■ In view of the limits set forth in *Chimel* above, we are of the view that the record in the present case does not depict a situation that justified a contemporaneous search incident to a valid arrest so as to prevent the arrestee from destroying evidence or gaining possession of a weapon. In fact, there is little evidence in the record regarding the pill box in issue. Officer Siegler testified that he and Hutson were stationed near appellee who was seated by the television in the living room, and the contraband was "over on the coffee table and underneath the couch." Siegler further said that he later discovered and opened the pill box, which was on the coffee table, sometime after King located the other contraband. While there was other limited testimony concerning the pill box, none of it can be read to justify the officers' warrantless search under the rationale set forth in *Chimel. See also New York* v. *Belton*, 453 U.S. 454 (1981). Because the record fails to show the pill box was within the appellee's immediate control, we uphold the trial court's ruling to suppress the valium pills that were discovered in the container or box opened and seized by Officer Siegler.

For the reasons stated above, we reverse and remand in part and affirm in part the trial court's holding.

HICKMAN, J., dissents in part, would also overrule the trial court's suppression of the valium pills.