Mark Thomas STOUT *v.* STATE of Arkansas

CR 94-1276                                       898 S.W.2d 457

Supreme Court of Arkansas
Opinion delivered May 22, 1995

*A. Wayne Davis* and *Steven E. Cauley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Mark Stout was driving his sister's hatchback station wagon on Interstate 30 near Arkadelphia when Deputy Sheriff Terry Palmer stopped him for crossing the center line of the highway. Stout rolled down the window by the driver's seat and handed Palmer his driver's license. Palmer smelled alcohol and asked Stout how much he had to drink. Stout replied "a beer or two since [he] had been in Texas." Stout explained that he had been in Texas visiting for a week or

two and was on his way back to Wisconsin. Palmer asked Stout to get out of the station wagon and take some field sobriety tests. Stout got out and took three tests. Palmer determined that Stout was not under the influence of intoxicants and issued a warning ticket for crossing the center line. At this time Stout, who was standing near the rear of the hatchback, was free to leave.

Palmer noticed that there was no baggage or clothing inside the station wagon and wondered about the truth of Stout's statement that he had been visiting in Texas for a week or two. As a result, he asked Stout if he had any contraband in the vehicle. Stout replied that he did not. Palmer asked if he and another deputy sheriff could search the vehicle. Stout said that they could. Although the record does not show the length of this conversation, it appears from all of the testimony that it occurred almost immediately after Palmer handed Stout the warning ticket, and Stout makes no argument that Palmer "detained" him unduly after a legitimate stop for an unauthorized warrantless search. *See United States* v. *Ramos*, 20 F.3d 348 (8th Cir. 1994). Palmer filled out a consent to search form, but Stout refused to sign it. Stout told Palmer that he could look in the vehicle from the outside. Palmer looked through the driver's window and saw a package of cigarettes on the front seat. He noticed that inside the cellophane on the pack was "what looked to me as a marijuana cigarette, what we call a roach." Palmer opened the door, took the cigarette butt, smelled it, and determined that it was a marijuana cigarette. At that time he arrested Stout, handcuffed him, and had him stand on the side of the highway. Palmer and the other deputy then conducted a search of the hatchback station wagon. In the hatchback area, there is a flap on the floor that covers the spare tire. Under the flap, and inside the spare tire compartment, Palmer found a square blue metal container. Inside it were packages wrapped in gray duct tape which that contained 10.6 pounds of marijuana.

Stout was subsequently charged with possession of a controlled substance with intent to deliver. He filed a motion to suppress the evidence seized, both the cigarette roach and the 10.6 pounds of marijuana, on the grounds that it was illegally seized under article 2, section 15 of the Constitution of Arkansas and Rule 12.4 of the Arkansas Rules of Criminal Procedure. He additionally made a Fourth Amendment argument. The trial court

denied the motion to suppress because the deputy sheriff had probable cause to make the initial stop for crossing the center line and the marijuana roach was in plain view; consequently, that seizure was valid. The trial court further reasoned that after Stout was lawfully arrested for possession of the marijuana cigarette, the subsequent search of the inside of the hatchback was valid as incident to the arrest for possession of the marijuana roach. We affirm.

Stout argues that the trial court erred in construing article 2, section 15 of the Constitution of Arkansas and the Fourth and Fourteenth Amendments to the Constitution of the United States in refusing to suppress the evidence of the 10.6 pounds of marijuana found in the hatchback area of the vehicle. His arguments are based on the fact the officer had no probable cause to believe the marijuana was in the hatchback area of the car. The arguments are without merit. Once Stout was lawfully arrested, the officers were justified in making a contemporaneous search of the interior of the vehicle.

In *New York* v. *Belton*, 453 U.S. 454 (1981), the Supreme Court provided a bright line rule for automobile searches incident to lawful arrest. The Court acknowledged "that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area." *Id.* at 457. Such searches are justified because of the need to remove any weapons that the arrestee might use to resist or escape, and to prevent the concealment or destruction of evidence. *Id.; see also Chimel* v. *California*, 395 U.S. 752 (1969). The scope of the search must be strictly tied to and justified by the circumstances. *Id.; see also Chimel*, 395 U.S. at 762; *Terry* v. *Ohio*, 392 U.S. 1, 19 (1968).

The Court in *Belton* stated that it recognized that *Chimel* and other cases had not provided a workable definition of "the area within the immediate control of the arrestee" when the area arguably includes the interior of the automobile that the arrestee occupied just prior to arrest. *Belton*, 453 U.S. at 460. The Court held that when police have made a lawful custodial arrest of the occupant of an automobile, they may, as a contemporaneous incident of that arrest, search the *passenger compartment* of the automobile. *Id.* Containers *found within the pas-*

*senger compartment of the car* may be searched whether they are open or closed, *id.* at 461, but the Court specifically stated that its holding encompassed "only the interior of the passenger compartment of an automobile and [not] the trunk." *Id.* at 460-61 n.4.

■■ In this case Stout was arrested for possession of marijuana after police found a marijuana roach in plain view in the front seat of the station wagon. After arresting Stout, Palmer opened the hatchback, raised the flap that covered the spare tire compartment, smelled a strong odor of marijuana, and discovered the metal container that held 10.6 pounds of marijuana. In *Baxter* v. *State*, 274 Ark. 539, 626 S.W.2d 935, *cert. denied*, 457 U.S. 1118 (1982), we held, without discussion, that the hatchback area of an automobile qualifies as part of the "passenger compartment" under *Belton.* That holding appears to be the general construction of "passenger compartment" under *Belton. See United States* v. *Russell*, 670 F.2d 323 (D.C. Cir. 1982); *Stevens* v. *State*, 38 Ark. App. 209, 832 S.W.2d 275 (1992); *State* v. *Delossantos*, 559 A.2d 164 (Conn. 1989). Professor Wayne LaFave in his treatise on search and seizure suggests that the passenger compartment is to be read as all space reachable without getting out of the vehicle and without regard to the likelihood in the particular case that it was possible to reach the object. 3 Wayne LaFave, *Search and Seizure* §7.1(c), at 16-17 (2d ed. 1987 & Supp. 1994). In summary, the trial court correctly ruled that under the Fourth Amendment the search was justified as being incident to a lawful arrest under *Belton.*

■ Next, appellant asks this court to hold that, even if the search and seizure were valid under the Fourth Amendment, they were unconstitutional under article 2, section 15 of the Constitution of Arkansas. Of course, we could hold that the Arkansas Constitution provides greater protection against unreasonable searches than does the Constitution of the United States, but we see no reason to do so. The wording of each document is comparable, and through the years, in construing this part of the Arkansas Constitution, we have followed the Supreme Court cases. It seems especially appropriate to do so in this case because courts in the past had great difficulty in balancing the competing interests and, at the same time, setting out workable rules for search and seizure cases involving automobiles. *See* 1987

Unofficial Supplementary Commentary to A.R.Cr.P. Rule 12.4. *Belton* has provided a practical and workable rule for fourteen years, and we have followed it on many occasions. Consequently, we choose to continue to interpret "unreasonable search" in Article 2, section 15 of the Constitution of Arkansas in the same manner the Supreme Court interprets the Fourth Amendment to the Constitution of the United States.

■    Appellant next argues that the Arkansas Rules of Criminal Procedure provide greater protection against unreasonable searches than does the Fourth Amendment, *see Cook* v. *State*, 293 Ark. 103, 106, 732 S.W.2d 462, 464 (1987), and that under A.R.Cr.P. Rule 12.4, deputy sheriff Palmer could not have lawfully searched the area under the hatchback without probable cause. Appellant asserts that Palmer improperly searched the hatchback area because he only saw a marijuana roach, which, without more, is insufficient to establish probable cause. *See State* v. *Villines*, 304 Ark. 128, 801 S.W.2d 29 (1990). Standing alone, Rule 12.4 does provide a more narrow definition of a reasonable search than does *Belton* because it requires the officer who stops a vehicle to have a reasonable belief that the vehicle contains things which are connected with the offense. The State responds that Palmer had more cause than just the cigarette; he had the cigarette and the unbelievable statement that appellant had been in Texas for a week or two. Taken together, these two elements would give a reasonable suspicion that Stout was a "mule" carrying drugs. However, we need not decide the issue on that basis. Rule 12.1 provides the *permissible purposes* of search and seizure incidental to arrest and, although written in 1976, embraces the *Belton* rationale. It provides that an officer may, incident to a lawful arrest, conduct a warrantless search of the person or his (immediate) property in order to protect the officer; or to obtain evidence of the commission of the offense for which the accused has been arrested; or to seize contraband, the fruits of the crime, or other things criminally possessed or used in conjunction with the offense. A.R.Cr.P. Rule 12.1. The purpose for this rule is to allow the search of the passenger compartment of a car incident to a lawful custodial arrest for the officer's protection.

Appellant parenthetically argues that our case of *Burkett* v. *State*, 271 Ark. 150, 607 S.W.2d 399 (1980), a pre-*Belton* case, held that under Rule 12.4 an officer cannot lawfully conduct a

warrantless search of a vehicle after arresting the defendant for possessing a marijuana roach. We are not persuaded by the argument because of a significant difference in the two cases. The illegal search in the cited case was in the trunk of the car, and we held that it was conducted in violation of the Fourth Amendment. Our holding today would be consistent on those same facts. The case at bar involved the search of the passenger compartment of the car.

■■ Appellant Stout next argues that the trial court erred in ruling that the seizure of the marijuana roach was admissible under the plain view exception to the general requirement of a search warrant. The requirements of the plain view exception are: (1) The initial intrusion must be lawful; (2) the discovery of the evidence must be inadvertent; and (3) the incriminating nature of the evidence must be immediately apparent. *Johnson* v. *State*, 291 Ark. 260, 263, 724 S.W.2d 160, 162 (1987). Here, there was substantial evidence for the trial court to find that the plain view exception applied. The officer testified at the suppression hearing that appellant consented to the search. It is well established that validly-obtained consent justifies an officer in conducting a warrantless search, with or without probable cause. *See* Joshua Dressler, *Understanding Criminal Procedure* § 88, at 177 (1991). If an officer discovers evidence during a warrantless "consent search" he may seize it without a warrant pursuant to the plain view doctrine. *Id.*

■■ Appellant Stout next argues the discovery of the roach was not inadvertent. The inadvertence requirement of the plain view doctrine has generally been interpreted to mean that "immediately prior to the discovery the police lacked sufficient information to establish probable cause to obtain a warrant to search for the object." *Johnson*, 291 Ark. at 263, 724 S.W.2d at 162. Inadvertence does not encompass total surprise or mean "unexpected." *Id.* Here, the marijuana roach was discovered as the deputy sheriff looked into the car. The fact that the deputy was suspicious of marijuana use before finding the roach does not make the discovery inadvertent. *See id.* at 263, 724 S.W.2d at 162. In sum, the evidence of the marijuana roach was admissible under the plain view doctrine.

In his final argument appellant Stout contends that the trial

court erred by refusing to rule that one of his witnesses was qualified to testify as an expert witness. The witness, a former marijuana grower who has special skills in the cultivation of marijuana and served as a drug education specialist in the United States Navy, is a member of the National Organization for Reform of Marijuana Laws, and was proffered as an expert to show that appellant possessed less than ten pounds of marijuana. The trial court refused to rule that he was an expert in weighing marijuana.

The qualification of an expert witness is within the sound discretion of the trial court and will not be reversed absent abuse. *Dillon* v. *State*, 317 Ark. 384, 877 S.W.2d 915 (1994). If there is some reasonable basis to find that the witness has knowledge of a subject beyond that of ordinary knowledge then witness may be qualified as an expert. *Poyner* v. *State*, 288 Ark. 402, 705 S.W.2d 882 (1986).

An element of the crime with which appellant was charged was that he possessed ten pounds or more of marijuana. *See* Ark. Code Ann. § 5-64-401 (Repl. 1993). When marijuana is weighed the stalks are excluded, but the stems and seeds are included. Appellant's witness stated that he could identify marijuana by sight, knew the difference between a leaf and a seed, and knew how to grow it. However, he admitted that he is not a chemist, had no comparable education in chemistry, and was a drug counselor in the Navy over twenty years ago. He stated that he just had a general knowledge of the legal definition of marijuana. He admitted that any definition he would give would be paraphrasing what he had read in the Arkansas statutes. He could not say how his background related to weighing and distinguishing stalks and stems.

In *Dillon*, the trial court found that while a proffered expert's experience might have been beyond that of persons who had no experience at all in the general area to which he would testify, it was not error to refuse to qualify him as an expert when his knowledge was below the standards of most recognized experts in the field. *Dillon*, 317 Ark. at 394, 877 S.W.2d at 920. Similarly, while appellant's proposed expert witness might have more knowledge than the average citizen about marijuana cultivation, he admitted that he was not a chemist, was not intimately famil-

iar with the legal definition of marijuana, and could not say how his experience related to the weighing of marijuana. The general test of admissibility of expert testimony is whether it will assist the trier of fact in understanding the evidence or determining a fact in issue. *Utley* v. *State*, 308 Ark. 622, 826 S.W.2d 268 (1992). As appellant did not show how the witness's testimony would aid the jury in determining whether the marijuana weighed more than ten pounds, the trial court did not abuse its discretion in refusing to qualify him as an expert.

Affirmed.