Johnny WRIGHT v. STATE of Arkansas

CR 96-1133                                        940 S.W.2d 432

Supreme Court of Arkansas
Opinion delivered March 17, 1997

[Petition for rehearing denied April 14, 1997.]

*Paul M. Herrod* and *Sandra Trawick Berry*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Johnny Wright was found guilty by a jury of possession with intent to deli ver methamphetamine, simultaneous possession of drugs and firearms, possession of drug paraphernalia, and possession with intent to deliver marijuana. For these convictions, Wright received two life imprisonment terms, and ten and three-year prison terms, all to run consecutively. Wright appeals these convictions, raising three points for reversal. Two points go to the admissibility and sufficiency of the evidence, and so we first detail the relevant facts resulting in Wright's arrest, charges, and convictions.

On December 30, 1995, at about 9:00 p.m., Wright was driving a new extended-cab pickup on Highway 270 outside Sheridan when State Police Officer Ronald Casey saw that Wright's pickup had no registration plate. Casey stopped Wright, and immediately afterwards, Wright exited his pickup. Wright produced his driver's license, but when asked for vehicle identification papers, Wright had no bill of sale, and could only produce a purchase order from Teeter's Chevrolet of Malvern. Wright also could furnish no proof of liability insurance.

Being near Wright, Casey smelled a faint odor of alcohol, and when he asked if Wright had been drinking, Wright said that he had had one drink earlier. Officer Casey did not arrest Wright for drinking, but instead, he proceeded to Wright's vehicle to compare the purchase order's Vehicle Identification Number (VIN) to the VIN on the truck. That is when Officer Casey saw Bobby Dixon, who was a passenger in the truck. Casey knew Dixon and had arrested him on several prior occasions. At this point, Casey decided that he would obtain Dixon's birth date and run a check for possible outstanding warrants. In doing so, Casey opened the passenger door, asked Dixon to exit and further asked Dixon if he had been drinking. Dixon said he had and picked up a beer can, stating, "I was drinking this." Casey set the beer can back on the pickup's floorboard, and as he did, noticed a glass of whiskey beside the beer can.

After seeing the whiskey, Casey further observed a chrome-plated pistol lying behind the whiskey glass. At this point, Casey suspected both Wright and Dixon had violated Arkansas's intoxication laws. In further investigation, Casey found a .32 derringer under the passenger seat, a Lorsin .380, and then Wright subsequently told Casey that a Bursa .380 was in a shoulder holster in the driver's side pocket of the truck.

After Casey found the three weapons, a deputy sheriff arrived as backup. Casey then gave the weapons to the deputy and the deputy stayed with Wright and Dixon while Casey checked the pickup for other alcohol or weapons. He located a 1.75 liter bottle of whiskey and a green canvas bag. Upon opening the bag, Casey smelled methamphetamine. The bag also contained computerized weighing scales and a plastic bag of marijuana. The officers then handcuffed Wright and Dixon, and took them to the sheriff's office where they were later charged. While Wright duly moved for a directed verdict at trial and continues his challenge of the sufficiency of the State's evidence on appeal, his primary argument is that the trial court erred in failing to grant his motion to suppress. Obviously, if the officers' testimonies and the evidence they found in the search of Wright's pickup were properly admissible at trial, the State offered more than substantial evidence to support Wright's convictions. Thus, we turn to Wright's suppression issue.

When Wright failed to present Officer Casey with vehicle registration papers, it was permissible for the officer to check the pickup's VIN which could be seen through the windshield on the driver's side of the truck. *See New York v. Class*, 475 U.S. 106 (1986) (Court upheld search when officers made traffic stop and in checking VIN, opened the car door and saw a concealed weapon). It was in conducting his VIN investigation that Casey saw passenger Dixon, whom Casey had arrested on past occasions. As the officer's attention was temporarily diverted towards Dixon, he went to Dixon's passenger door, opened it, asked Dixon to step out, and requested identification.

Under Ark. R. Crim. P. 2.2(a), Officer Casey was permitted to request Dixon's cooperation in the investigation or prevention

of crime. However, Wright argues that, when Casey approached Dixon's passenger door, he had no information that Dixon was involved in a felony or misdemeanor or that Dixon was doing anything wrong. Even so, when checking out whether Wright had proper ownership or registration documents, Casey's concern heightened upon seeing Dixon — a person he had arrested on prior occasions — and sensed the need to obtain a background check on him. Nonetheless, Officer Casey had not, at this stage, completed his traffic stop investigation of Wright.

Recently, the Supreme Court held that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop. *Maryland v. Wilson*, ___ U.S. ___, 117 S.Ct. 882 (Feb. 19, 1997). The Court duly noted that, in *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), it had already ruled that a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle. The *Wilson* Court extended the *Mimms* rule to passengers, reasoning that, while there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passengers is minimal.

Here, when Dixon departed the vehicle, he admitted drinking beer and handed Casey the beer can. When Casey merely replaced the can on the floorboard of the truck, he inadvertently viewed the glass of whiskey and immediately behind it, he saw a chrome-plated pistol. At that point, Casey said he reasonably suspected Wright and Dixon had violated Arkansas's public-intoxication misdemeanor laws.

■ In determining the admissibility of the alcohol and other items found inside the pickup, we find guidance from this court's decision in *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995), where the court set out the plain-view exception to the general requirement of a search warrant. The *Stout* court stated the search-warrant exception is established when it is shown: (1) the initial intrusion was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. Those requirements were shown here.

■ We would also point out that Ark. R. Crim. P. 3.1 provides that a law enforcement officer lawfully present in any

place may, in the performance of his duties, stop and detain any person whom he reasonably suspects is committing, has committed, or is about to commit a felony or misdemeanor involving danger of forcible injury to persons. While this court has not been called upon to decide if a possible DWI offense falls within the language of Rule 3.1, our Court of Appeals has held, and we believe correctly, that a DWI violation carries with it the danger of forcible injury to others. *See Nottingham v. State*, 29 Ark. App. 95, 778 S.W.2d 629 (1989).

■ Again, Wright suggests that, even if Casey had cause to detain Dixon, Wright should have been free to go after Wright produced his purchase order documents. Such a position is meritless for two reasons. First, as mentioned earlier, Officer Casey's investigation concerning Wright had not been completed before or at the time Casey encountered Dixon, who promptly caused the beer and whiskey to be revealed. Second, the glass of whiskey sighted by Casey had been within the reach and control of Wright when he occupied the driver's seat of the pickup, and this evidence, along with the alcohol odor Casey smelled on Wright moments earlier, was sufficient to put Wright in constructive possession of the whiskey. *See Cerda v. State*, 303 Ark. 241, 795 S.W.2d 358 (1990). This evidence was sufficient to give Officer Casey reasonable cause to believe Wright may have violated Arkansas's DWI laws. *See* Ark. Code Ann. § 5-65-103 (Repl. 1993).

■ ■ Once Officer Casey was lawfully aware that the pickup driven by Wright contained things that were subject to seizure, he was permitted, without a search warrant, to search and seize those things discovered in the course of the vehicular search. *See* Ark. R. Cr. P. 14.1(a). While Casey's backup officer lawfully detained both Wright and Dixon behind the truck, it was permissible for Casey to continue his search of the truck for more alcohol and weapons. Containers, such as the green canvas bag in this case, found within the passenger compartment of the car may be searched whether they are open or closed. *See Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995); *see also New York v. Belton*, 453 U.S. 454 (1981). For the reasons discussed, we hold the trial court was correct in denying Wright's motion to suppress. We also con-

clude that the evidence resulting from the vehicle's search and testimony of the officers were more than sufficient to affirm Wright's conviction. Before leaving this point, we note Wright's argument that less than an ounce of marijuana was found in the canvas bag, and the evidence was insufficient to support the conviction for possession of marijuana with intent to deliver. We need only cite *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994), where this court held that, in cases where less than the presumptive amount was found in possession of the accused, but other proof of intent to deliver was present, the appellant's conviction for possession with intent to deliver was proper. *See also Conley v. State*, 308 Ark. 70, 821 S.W.2d 783 (1992).

Wright's final point is that the trial court erred in allowing State's witness, Tommy Livingston, to testify on rebuttal. He argues Livingston's name was not disclosed prior to trial and that some of Livingston's testimony included matters prohibited by Rule 404(b) of the Arkansas Rules of Evidence.

In his defense, Wright planned to call witness Bill Welch who would testify that, unbeknownst to Wright, Welch had placed the canvas bag in Wright's pickup prior to Officer Casey's traffic stop. Welch's explanation was that a friend had given him money to take the bag containing six or seven joints of marijuana to Hot Springs. Welch's story was that he later examined the bag, smelled methamphetamine, and planned to return it to his friend. But in the meantime, Welch drove to Wright's shop, and because people were inside, Welch placed the bag in Wright's new pickup. He later discovered that Wright left in his truck. In sum, Welch's story is that when Wright was stopped by Officer Casey, Wright was unaware of the bag and methamphetamine in it.

At trial, the State said it had learned the day before that Livingston would testify and contradict Welch's story. The State said that Livingston would claim he had heard Welch say that Welch was offered $25,000 to take the "fall" for Wright. The State suggested that Livingston's testimony may be more than rebuttal, and asked the trial judge if the State would be allowed to reopen its case-in-chief. Wright rejoined that Livingston's name had not been disclosed and that the State's request should be denied. He

also complained that Livingston's testimony bearing on other criminal acts or wrongs should be excluded as well.

■ The trial judge declined to make any rulings until he heard Welch's actual testimony. However, neither the State nor Wright renewed their motions or objections after Welch testified, so the judge was never asked for a ruling. This court has previously held that there is no "plain error" rule, but instead has consistently held that the burden of obtaining a ruling is on the movant, and unresolved questions and objections are waived and may not be relied upon on appeal. *Aaron v. State*, 319 Ark. 320, 891 S.W.2d 364 (1995).

■ We do point out that, during Livingston's testimony, Wright did make a relevancy objection to Livingston's remark, "We had went and got some dope, me and Welch, in California, around Los Angeles. And we brought it back to Willow." Livingston's statement, however, clearly rebutted Welch's *direct* testimony, denying that Welch had been "in any way connected with this drug running operation with Tommy Livingston." The State's evidence in this respect was responsive to that presented by the defense, and the trial court in no way abused its discretion in overruling Wright's objection on this point.

In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been examined and there are no other points that involve prejudicial error.

NEWBERN, J., concurs.

DAVID NEWBERN, Justice, concurring. The stop of Johnny Wright's vehicle had solely to do with the failure to display a license plate. Officer Casey testified at the suppression hearing that he had observed no erratic operation of the vehicle, and even after he smelled alcohol on Mr. Wright's breath, he did not believe "no way" that Mr. Wright was under the influence of alcohol.

Bobby Dixon had no standing to challenge the search of Mr. Wright's truck, *Dixon v. State,* 327 Ark. 105 (1997), but Mr. Wright did. It should be pointed out that, while the Supreme

Court in *Maryland v. Wilson*, ___ U.S. ___, 117 S.Ct. 882 (Feb. 19, 1997), approved ordering a passenger from a car, it did not go so far as to authorize a police officer to open a vehicle door in the circumstances presented there and here. Officer Casey testified he had no suspicion whatever that Mr. Dixon was committing a crime when he opened the door. It could thus be said that opening the door to the truck constituted a "search" without reasonable suspicion of criminal activity or probable cause to search.

In view of the apparent purpose of the officer to facilitate Mr. Dixon's exit from the truck, after issuing a lawful order for him to do so, I am willing to apply the rule of *Michigan v. Long*, 463 U.S. 1032 (1983). The Supreme Court's holding in that case, applied to the facts now before us, permitted Officer Casey, once he had a plain view of the pistol inside the truck, to conduct a "protective search" of the areas inside the vehicle. He was permitted to search the canvas bag, to which the occupants of the truck could have had immediate access upon re-entering the vehicle and which could have contained a weapon.

The search that followed cannot be justified on the basis of suspicion of driving while intoxicated, due to the lack of any such suspicion. Officer Casey, however, after opening the vehicle door and viewing the beer can and the glass of whiskey, could well have had probable cause to believe that Mr. Wright was guilty of drinking in public and that the vehicle contained evidence of that crime.

At a suppression hearing, Officer Casey testified (as abstracted) that, after opening the door to the truck and seeing the open beer can handed to him by Mr. Dixon and seeing the glass of whiskey, Mr. Dixon "was under suspicion for alcoholic beverage open container in a vehicle under State Statute 5-71-212."

The offense is defined in Ark. Code Ann. § 5-71-212(c) (Repl. 1993) as consumption of "any alcoholic beverages in any public place, on any highway, or street, or . . . upon any vehicle commonly used for transportation of passengers . . . ." As the officer had probable cause to believe that Mr. Wright's truck, as well as the canvas bag, contained evidence that Mr. Wright and

Mr. Dixon had violated the public drinking law, it was appropriate for the officer to search the truck and the bag and seize the items he discovered.

Although my reasons for affirmance vary somewhat from those of the majority, I concur in the result.