STATE of Arkansas *v.* Hezile EARL, Jr.

CR 97-1310 970 S.W.2d 789

Supreme Court of Arkansas
Opinion delivered June 11, 1998

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellant.

*Mark F. Hampton*, for appellee.

TOM GLAZE, Justice. ▪ The State of Arkansas brings this interlocutory appeal of the trial court's grant of appellee Hezile Earl, Jr.'s motion to suppress evidence seized during the warrantless search of the cab of his truck after his having been stopped for a routine traffic violation. The State's arguments for reversal challenge the trial court's ruling as a matter of law because it failed to find that the warrantless search of Earl's truck was proper since the

search met an exception to the warrant requirement. Because the questions presented by the State necessarily turn on the interpretation and application of our criminal rules, particularly Ark. R. Crim. P. 5.5, we conclude that we have jurisdiction to hear the instant appeal, as our holding in this case will establish important precedent and is necessary for the correct and uniform administration of justice. Ark. R. App. P.—Crim. 3(c); *see State v. Gray*, 330 Ark. 364, 954 S.W.2d 502 (1997).

The State charged Earl by felony information with possession of a controlled substance with intent to deliver. Earl responded by filing motions to suppress the cocaine seized from the prescription bottle found in the cab of his truck. The trial court heard Earl's motion on July 21, 1997.

The State's only witness as to the events which transpired on the morning in question was Officer Ralston of the Des Arc Police Department. He testified to the following. At approximately 3:00 a.m. on August 16, 1996, he observed Earl's truck run a stop sign. When the truck passed the officer, he recognized Earl as someone he had stopped on two prior occasions. Officer Ralston turned on his headlights and proceeded to stop the truck for the violation. Earl pulled over, immediately exited his vehicle, and walked towards the patrol car. After radioing for backup, Ralston departed his vehicle and met Earl. Ralston said that Earl was "mouthy," wanted to know why he had been stopped, and took an offensive posture. According to the officer, Earl was also belligerent and acting nervous.

Officer Ralston testified that he asked Earl to provide his license, registration, and proof of insurance, but Earl ignored him. Ralston related that he became concerned for his safety because he was alone. He said he was concerned, too, because Earl had filed a federal lawsuit alleging harassment against the city and the police department. Officer Ralston stated that he instructed Earl to stand at the back of his truck, which after some discussion, Earl did. Although Ralston did not pat down Earl for possible weapons, Ralston proceeded to search for weapons that might be located in the truck. Ralston testified that he spotted a prescription bottle in an open caddy in the cab. He picked up the amber-colored bot-

tle, took it outside of the cab, and shined his flashlight into it. Seeing a suspicious substance, Ralston opened the bottle; the substance ultimately was identified as crack cocaine. Ralston testified that he then placed Earl under arrest for possession of a controlled substance, handcuffed him, and afterwards, patted Earl down for weapons. Ralston stated his backup officers arrived after he had handcuffed Earl.

At the conclusion of the above testimony, the trial court ruled that the evidence seized by Officer Ralston should be suppressed. In so deciding, the court stated that, while it acknowledged that Earl was not the easiest person to deal with, because it was a traffic stop, "[T]he officer went beyond his authority once he opened the truck door . . . ." Earl then moved for a dismissal of the charges based on the lack of evidence. The trial court granted Earl's dismissal motion, and the State appeals the trial court's rulings.

The State argues first that the evidence found in Earl's truck was the result of a legal warrantless search under Ark. R. Crim. P. 5.5. Alternatively, the State contends that the search was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. Because we find the State's first argument persuasive, we reverse the trial court's grant of Earl's motion to suppress, and we remand for trial.

 Arkansas Rule of Criminal Procedure 5.5 (1997) provides:

> The issuance of a citation in lieu of arrest or continued custody *does not affect* the authority of a law enforcement officer to conduct an otherwise lawful search or any other investigative procedure *incident to an arrest.*

(Emphasis added.) The plain language of Rule 5.5 permits a police officer to conduct a lawful search where the officer could either arrest an individual or detain him for further investigation. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806 (1996) (*citing Delaware v. Prouse*, 440 U.S. 648, 659 (1979)). Ark. R. Crim. P. 4.1 gives officers the authority to arrest without a

warrant. Under Rule 4.1, a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed *any* violation of law in the officer's presence. Ark. R. Crim. P. 4.1(a)(iii) (1997). (Emphasis added.) In essence, Rule 4.1 tracks the holdings of *Prouse* and *Whren*, recognizing that officers have probable cause to stop and arrest in such situations. Therefore, construing the authority conveyed in Rule 4.1 in conjunction with the discretionary power to search in Rule 5.5, we hold that where an officer has the probable cause to arrest pursuant to Rule 4.1, he may validly conduct a search incident to arrest of either the person or the area within his immediate control under Rule 5.5. *See U.S. v. Robinson*, 414 U.S. 218 (1973). The officer's actions need no other justification. *Id.; accord State v. Knowles*, 569 N.W.2d 601 (Iowa 1997), *cert. granted*, 118 S.Ct. 1298 (1998) (interpreting Iowa Code section 805.1(4) as providing authority to search when a traffic violation has occurred that would constitute grounds for an arrest).

█ Here, Officer Ralston indisputably observed Earl's truck run a stop sign. Thus, Ralston was authorized to arrest Earl at the moment he stopped Earl's truck, regardless of the fact that this was only a minor traffic violation. Since Ralston had the power to arrest Earl, pursuant to Rules 4.1 and 5.5, Ralston could lawfully conduct a search incident to an arrest, and he did. Simply because a police officer's decision is to issue a citation in lieu of a custodial arrest, that does not affect the officer's right to conduct a search of the same scope as a search incident to arrest, as a citation is equivalent to a custodial arrest for authority to search purposes under Ark. R. Crim. P. 5.5.

█ The dissent contends that in order for the search of Earl's truck to be valid, Earl must have been arrested prior to the search. The dissent is mistaken. This court, as well as the Supreme Court, has held that a search is valid as incident to a lawful arrest even if it is conducted *before* the arrest, provided that the arrest and search are substantially contemporaneous and that there was a probable cause to arrest prior to the search. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *Brunson v. State*, 327 Ark. 576–

A, 940 S.W.2d 440 (1997).[1] (Emphasis added.) Officer Ralston clearly had probable cause to place Earl under arrest prior to the search, since Earl committed a traffic violation in the officer's presence. Furthermore, Earl's formal arrest quickly followed on the heels of the challenged search of Earl's automobile. Just like the Supreme Court concluded in *Rawlings,* we do not believe it particularly important either that the search preceded the arrest rather than vice versa. *Rawlings,* 448 U.S. at 111.

■ ■ Further support for our holding is found in *Robinson, supra,* which is another traffic-offense case. There, the Supreme Court adopted a categorical rule that when a valid custodial arrest occurs, a search incident to arrest is automatically permissible. The fact of the arrest establishes the authority to search. *Id.* at 235. Similarly, in *Gustafson v. Florida,* 414 U.S. 260, 266 (1973), the Court held a search incident to arrest may be conducted even when the custodial arrest is for driving without a driver's license, a minor traffic violation. It is well to note that the Supreme Court in *Robinson* recognized that there is a distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons under *Terry.* As the court explained, by quoting language from *Terry,* "The former, although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, is also justified on other grounds, and can therefore involve a relatively extensive exploration of the person." *Robinson,* 414 U.S. at 227 (citation omitted). A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. *Id.* at 227–228. As is clear from the Court's statements, a more intrusive search is permissible under the search incident to arrest exception as compared to the *Terry* exception to the warrant requirement.

■ Though not challenged in this case, it might be said that Officer Ralston's search was permissible up to the point of

---

[1] The dissent does cite to *Brunson v. State,* but only for the proposition that the safety of police officers while conducting traffic stops is a paramount consideration that this court has recognized.

opening the closed prescription bottle. However, the Supreme Court decided this issue in *New York v. Belton*, 453 U.S. 454, 460 (1981), where it held that an officer making a lawful custodial arrest of an occupant of a vehicle may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle, including the contents of any containers found within the passenger compartment. The Court reasoned that "if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Id.*

In conclusion, Officer Ralston, under our rules of criminal procedure 5.5 and 4.1, was legally permitted to arrest Earl for the traffic violation. The ability to issue a citation in lieu of arrest gave Ralston the additional authority to do a full search incident to an arrest. Under *New York v. Belton, supra*, Ralston had the power to search the contents of the prescription bottle in which he found the cocaine. The trial court improperly concluded that because it was a mere traffic stop, the police officer had no authority to search Earl's truck, which as we have just explained, was entirely permissible under Rules 4.1 and 5.5. Hence, the trial court erred in granting Earl's motion to suppress. Having determined the search to be valid, we need not address the State's alternative argument.

We are aware that the American Bar Association has recommended that Rule 5.5 and similar rules employed in other jurisdictions not be used due to questions pertaining to its constitutional validity. However, Rule 5.5's constitutionality is not before us.[2] Thus, any comment by this court would be advisory in nature and inappropriate.

---

[2] We note that, while the state constitutional issue has not been raised in this case, we are aware that some courts, as a matter of state law, have declined to permit searches in as broad a set of circumstances as *Belton* would authorize. *See State v. Hernandez*, 410 So.2d 1381 (La. 1982); *Commonwealth v. Toole*, 389 Mass. 159, 44 N.E.2d 1264 (1983); *State v. Pierce*, 136 N.J. 184, 642 A.2d 947 (1994); *People v. Blasich*, 73 N.Y.2d 673, 543 N.Y.S.2d 40, 546 N.E.2d 40 (1989); *State v. Brown*, 63 Ohio St.3d 349, 588 N.E.2d 113 (1992); *State v. Kirsch*, 69 Or. App. 418, 686 P.2d 446 (1984); *State v. Ringer*, 100 Wash.2d 686, 674 P.2d 1240 (1983); *see also* LAFAVE, SEARCH AND SEIZURE, § 7.1(a) (3rd Ed. 1996). Unlike the foregoing jurisdictions, *Belton* has been consistently followed in our decisions. *E.g., Wright v. State*, 327 Ark. 558, 940 S.W.2d 432 (1997); *Stout v. State*, 320 Ark. 552, 898

Reversed and remanded.

CORBIN, J., concurs; NEWBERN, BROWN, and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. We granted this appeal by the State because it raises the issue of whether a police officer may conduct a warrantless search of a vehicle following a traffic violation by the driver. I disagree with the majority that such a search is authorized under these facts because (1) no custodial arrest for a traffic violation occurred prior to the search, and (2) the police officer's safety was not at issue as evidenced by the fact that the police officer did not pat down Hezile Earl after he got out of his car. I would affirm the trial court's decision to suppress the evidence.

The facts are that at about 3:00 a.m. on August 16, 1996, Des Arc Police Officer Chris Ralston stopped Hezile Earl, Jr., in his pickup truck for running a stop sign. Officer Ralston knew Earl and had stopped him twice before for traffic violations on different dates but had not searched his truck. He stated Earl was always "belligerent" when he was stopped by police officers and described him as a "racist." (Officer Ralston is white. Earl is black.)

On August 16, 1996, prior to the stop, Officer Ralston was following Earl's pickup truck and another vehicle with his lights off and saw him run a stop sign. The police officer stopped Earl's truck and described what happened next:

> When I stopped Mr. Earl, he pretty much immediately got out of his own vehicle, started toward me. I radioed for backup since I work alone. I got out and met Mr. Earl. Mr. Earl was mouthy. He was wanting to know why I stopped him. He was taking an offensive posture. I tried to explain why I stopped him. He was very belligerent. He was acting nervous. I have had two previous traffic stops with Mr. Earl and [I am] very familiar with Mr. Earl, and something was peculiar, he was acting very peculiar.

---

S.W.2d 457 (1995); *State v. Resinger*, 297 Ark. 405, 762 S.W.2d 787 (1989); *Campbell v. State*, 294 Ark. 639, 746 S.W.2d 37 (1988).

Officer Ralston then said Earl's mood changed, and he picked up a soccer ball:

> He [Earl] said "look at the soccer ball, it's for my daughter." And just his, he was trying to keep me from going to the front. When I would start going toward the cab of his truck, he kept trying to get me to stay away from his cab, which is something I hit on.

Officer Ralston stated that Earl would not "stay put," and he was asked why he did not handcuff him. His response was:

> Because at that time he only had run a stop sign. I normally don't place them under arrest and put them in cuffs for running a stop sign.

Officer Ralston further admitted that he had not patted Earl down at this point and that this was "a mistake" on his part.

The police officer had Earl stand at the back of the truck, and he went to the cab of the truck, opened the door, reached under the seat in search for weapons, and while doing so saw a prescription bottle in a "cubby space" of the dashboard. He opened the bottle and assessed the contents as either crack cocaine or methamphetamine. According to Officer Ralston, at that time he placed Earl "under arrest" for possession of a controlled substance. He also prepared a traffic citation for running the stop sign, which Earl refused to sign.

The fallacy in the majority opinion is that Officer Ralston did not make an arrest until after he found the prescription bottle. He admits that. The majority, however, erroneously relies on *custodial arrest* decisions by the United States Supreme Court to bolster its conclusion that a mere traffic citation authorizes the underlying search. *See, e.g., New York v. Belton*, 453 U.S. 454 (1981); *United States v. Robinson*, 414 U.S. 218 (1973). These cases do not authorize *carte blanche* searches absent a custodial arrest. In *United States v. Robinson, supra*, the Court's decision regarding searches incident to arrest was premised on the fact that the officer had probable cause to arrest the defendant and had effected a full-custody arrest. The Court held:

> A *custodial* arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful *custodial* arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a "reasonable" search under that Amendment.

*Robinson*, 414 U.S. at 235 (emphasis added). There was no custodial arrest for a traffic violation in the instant case. Furthermore, the Court in *Robinson* expressly decided not to address the issue of whether the same rule applied for "routine" traffic stops where the police officer intended to issue only a traffic citation.

To the same effect is *New York v. Belton*, 453 U.S. 454 (1981). In *Belton*, the Court expanded *Robinson*'s search-incident-to-a-custodial-arrest rule to include the passenger compartment of a vehicle as well as to those containers located within that area. Our court has followed this principle announced in *Belton*. *See Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995). But a custodial arrest was still the threshold requirement. Stated simply, the instant case manifestly does not involve a custodial arrest that would support this search.

*Whren v. United States*, 517 U.S. 806 (1996), is also relied on by the majority but it, too, is inapposite to the instant case. *Whren* concerned whether a police officer's stop of a vehicle, where he was able to see two plastic bags of crack cocaine in the passenger's hands at the time of the stop, was an unreasonable search under the Fourth Amendment. The Court rejected the petitioners' contention that the police officer's traffic-violation justification for the stop, which occurred in a "high drug area," was an unconstitutional pretext when the police officer lacked probable cause to believe they were involved in illegal drug-dealing activity. Rather, the Court held that a temporary detention was reasonable due to the existence of probable cause to believe a traffic violation had occurred. The stop, coupled with the crack cocaine in the passenger's hands in plain view of the police officer, was sufficient to warrant seizure of the cocaine. Those facts clearly differ from the instant case where the police officer commenced a vehicular

search, after the driver was out of the car, and did so based on mere suspicion that Earl was hiding something. In fact, Officer Ralston testified that he was looking for a weapon. The *Whren* case is simply not controlling.

The majority relies on Ark. R. Crim. P. 5.5 which reads:

> The issuance of a citation in lieu of arrest or continued custody does not affect the authority of a law enforcement officer to conduct an otherwise lawful search or any other investigative procedure incident to an arrest.

It further relies on Ark. R. Crim. P. 4.1(a) which reads in part:

> (a) A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed
>
> (i) a felony;
> (ii) a traffic offense involving:
> (A) death or physical injury to a person; or
> (B) damage to property; or
> (C) driving a vehicle while under the influence of any intoxicating liquor or drug;
>
> (iii) any violation of law in the officer's presence[.]

Our Rule 5.5 was adopted in 1976 pursuant to an American Bar Association recommendation. *See* AMERICAN BAR ASSOCIATION, STANDARDS RELATING TO PRETRIAL RELEASE § 1.4 (Approved Draft, 1968). The ABA, however, reversed itself in 1986. After substantially revising the standard from which our Rule 5.5 was derived, the ABA issued this commentary:

> The original standard read: "Nothing in these standards should be construed to affect a law enforcement officer's authority to conduct an otherwise lawful search even though a citation is issued." This language has been changed because, as originally drafted, the standard could be interpreted as authorizing a search incident to an arrest even though the officer does not place the accused under arrest but instead issues a citation. While the fourth amendment permits searches incident to even those arrests that need not result in a trip to the stationhouse, there must in fact be an arrest in order to justify a search incident to it. Thus, a police officer who decides *ab initio* to issue a citation cannot jus-

tify a search of the accused on the ground that the officer could have arrested the accused but did not.

2 AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE 10.33 (2d ed. Supp. 1986)(citations omitted).

Here Officer Ralston testified that he had not arrested Earl for the traffic violation prior to the search, and after the search, he did not arrest him for the traffic violation. Earl's arrest was due to possession of a controlled substance. And based on the police officer's rendition of events, a traffic ticket had not been issued before the search commenced though one was issued apparently after the arrest for drug possession. Rule 5.5 is constitutionally infirm in my judgment in that the *Robinson-Belton* line of cases required a custodial arrest for a traffic violation prefatory to a search.[1] Clearly, this court has simply failed to repeal a rule that is unconstitutional and, as with statutes, we should not give Rule 5.5 an interpretation so absurd as to provide *carte blanche* authority for all searches incident to traffic citations even when officer safety is not at issue. *See, e.g., Mings v. State*, 316 Ark. 650, 873 S.W.2d 559 (1994); *Cox v. State*, 313 Ark. 184, 853 S.W.2d 266 (1993). That, however, will be the effect of today's decision.

With regard to Rule 4.1(a), it is obvious that the rule emphasizes arrests for traffic violations in certain limited circumstances. But it does permit warrantless arrests when a police officer observes "any violation of law in the officer's presence." Ark. R. Crim P. 4.1(a)(iii). Again, no arrest was made for running the stop sign. It was only after Officer Ralston found the prescription bottle and opened it that an arrest was made, and that arrest was for possession of a controlled substance.

Absent a traffic–related arrest or reasonable cause to believe another crime has been committed, searches must be limited to officer-safety searches under *Terry v. Ohio, supra.* This is clearly the law in the majority of jurisdictions. *See, e.g., United States v.*

---

[1] I do acknowledge that the Supreme Court of Iowa has upheld a nearly identical statutory provision to our Rule 5.5 against constitutional attack in a 5-4 decision. However, the United States Supreme Court recently granted a petition for writ of certiorari to the Iowa Supreme Court to review the case. *See State v. Knowles*, 569 N.W.2d 601 (Iowa 1997), *cert. granted*, 118 S. Ct. 1298 (1998).

*Evans*, 994 F.2d 317 (7th Cir. 1993)(upholding the search of a vehicle based on furtive movements as well as the defendant's decision to park in front of a house known to be involved in drug trafficking), *cert. denied*, 510 U.S. 927 (1993); *United States v. Richards*, 967 F.2d 1189 (8th Cir. 1992)(upholding the search of the passenger compartment of a motor home when the defendant, who was a released felon, was nervous and when officers saw .22 caliber rifle cartridges on the floor); *People v. Innis*, 604 N.E.2d 389, 392 (Ill. App. 4 Dist. 1992)("[T]here may be justification to search a vehicle stopped for a minor traffic offense, if there is a 'reasonable and articulable suspicion' the defendant is armed and dangerous."), *citing Terry v. Ohio*, 392 U.S. 1 (1968); *Sanders v. State*, 576 N.E.2d 1328 (Ind. App. 1 Dist. 1991)(requiring suppression of marijuana discovered in defendant's automobile when the officers did not reasonably believe that the defendant, who was stopped for making two right turns without using a signal, placed them in danger).

Certainly, the safety of police officers while conducting traffic stops is a paramount consideration that has been recognized by this court. *See, e.g., Shaver v. State*, 332 Ark. 13, 963 S.W.2d 598 (1998); *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997), *reh'g denied*, 327 Ark. 576-A, 940 S.W.2d 440 (1997). However, in this case, the search was conducted not for Officer Ralston's safety, but based solely on Earl's "suspicious" conduct in distracting Officer Ralston from approaching the front of the truck. In fact, Officer Ralston was not concerned enough for his safety to pat Earl down before focusing his attention on the interior of the truck's cab compartment. Had Officer Ralston's safety been at issue, the majority's decision would be correct. But such is not the case.

Both the Fourth Amendment to the U.S. Constitution and Article 2, § 15 of the Arkansas Constitution contemplate that a judge issue a search warrant for searches except in narrowly drawn instances. *See, e.g., Shaver v. State, supra* (officer safety); *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997)(plain view); *Hazelwood v. State*, 328 Ark. 602, 945 S.W.2d 365 (1997)(search incident to arrest). Searches by a police officer incident to a citation for a

routine traffic violation fall outside of these warrant-exception categories.

I would affirm the order of the trial court, and for that reason I respectfully dissent.

NEWBERN and IMBER, JJ., join.