Roger KIMERY *v.* STATE of Arkansas

CA CR 97-1172 973 S.W.2d 836

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered September 9, 1998

*Mike Everett,* for appellant.

*Winston Bryant,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Bricks of marijuana weighing some six-odd pounds were discovered in appellant Roger Kimery's vehicle. Appellant filed a pretrial motion to suppress this evidence, in which he argued that the stop of his vehicle for a traffic violation was a pretext for conducting a search for drugs. The trial court rejected that argument finding that a search of the vehicle was permitted on grounds of reasonable or probable cause under Ark. R. Crim. P. 14.1. Alternatively, the trial court also upheld the seizure under the plain-view doctrine.

Pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, appellant entered a conditional plea of guilt to a charge of possession of a controlled substance (marijuana) with intent to deliver, reserving the right to appeal the trial court's denial of his motion to suppress. For reversal, appellant challenges both findings made by the trial court. We find no error and affirm.

The record discloses that on July 21, 1996, Investigator Bryan Malone of the Poinsett County Sheriff's Office received a phone call from a confidential informant who said that appellant had just been to the informant's house and had tried to sell him a quantity of marijuana. Prior to receiving this call, Officer Malone had already obtained a warrant authorizing a search of the appellant's home based on this same informant's purchase of marijuana at the home the previous day. Officer Malone set out to investigate, and Officer Danny Smith accompanied him. They proceeded to the area of the informant's home and met appellant's vehicle travelling down the highway. Officer Malone testified that, although they were in an unmarked patrol car, it was obvious that it was a police car, given the color, the make of the vehicle, and the number (five or six) of antennae on the back of it. He said that, as the vehicles came within fifty yards of one another, appellant "swept" into the driveway of a farmer's shop. Officer Malone activated the blue lights shortly after appellant turned into the driveway. Malone testified that he took this action because appellant had made an illegal turn in that no signal had been used when the turn was made. Admitting that he was also prompted by the information he had just received from the informant, as well as his knowledge of the activities that took place the day before, Malone testified that he would stop any vehicle for making an improper turn, provided he had witnessed the violation occur. The officers turned around and pulled into the driveway as appellant was emerging from his vehicle. In the presence of police officers arriving in a vehicle with flashing blue lights, appellant walked hastily into the farm shop. The officers parked behind appellant's vehicle.

As to the discovery of the contraband, Officer Malone testified that appellant came back outside and that, while he was standing with appellant beside the police car, Officer Smith exclaimed that he had found drugs in appellant's vehicle. Malone was situated a short distance away from appellant's vehicle, and within a few moments he walked over to see what had been found. He saw a large quantity of marijuana in the floorboard of the vehicle. According to Malone, the marijuana was in the form of bricks wrapped in Saran-Wrap material, and there were five to seven

such bricks stacked three-quarters of the way up inside a brown paper bag. The court questioned the officer on two occasions:

THE COURT: Could you see inside the bag from the outside of the car:

WITNESS: Yes, sir. I'm six foot three and standing up from the vehicle, and when the bag's directly below you, it's pretty easy to see what's inside the vehicle.

THE COURT: But I mean, they hadn't folded the bag over —

WITNESS: No, sir.

THE COURT: — or tried to hide it —

WITNESS: No, sir.

THE COURT: — it was in the floorboard of the car?

WITNESS: Yes, sir.

THE COURT: That's kind of dumb.

WITNESS: Yes, sir.

. . .

THE COURT: Was it a regular size grocery sack? A brown paper poke?

WITNESS: Yes, sir.

THE COURT: And the top was open, and you could just see down into it?

WITNESS: Yes, sir.

THE COURT: Passenger side floorboard?

WITNESS: Yes, sir.

Officer Malone also testified that the paper bag had not been folded at all, that it was not even crinkled, and that it was almost like new.

Ricky Scott was at the farm shop that day and testified on appellant's behalf. He said that appellant had been there a few minutes before the officers stopped and that the officers had driven by the shop twice before stopping. He did not recall seeing the marijuana, saying that he was minding his own business.

Charles Strange was also at the shop, working on a lawn mower. He testified that, while standing outside and talking with appellant, the officers pulled into the driveway but then drove back out onto the road, and then turned around and came back to the shop. Looking inside appellant's vehicle from the driver's side, he saw a black plastic garbage bag. He said that he could not see what was inside the bag.

Appellant testified that the marijuana bricks were inside a plastic garbage bag that was tied at the top and sitting on the passenger-side floorboard. He said that the contents of the bag could not be seen.[1]

While this appeal was pending and during the course of our deliberations, the supreme court decided the case of *State v. Earl*, 333 Ark. 489, 970 S.W.2d 789 (1998), an appeal brought by the State upon the trial court's grant of a motion to suppress evidence. There, Hezile Earl had been stopped by a police officer who had observed Earl's vehicle run a stop sign. Reportedly, Earl was uncooperative and belligerent, so the officer conducted a search of the passenger compartment of the vehicle for weapons and found a prescription bottle containing a suspicious substance that proved to be crack cocaine. Earl was then arrested.

■ On these facts, the supreme court reversed the order of suppression. After first observing that generally the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred, the court based its reversal on the provisions of Rules 4.1 and 5.5 of the Arkansas Rules of Criminal Procedure. Under Rule 4.1, an officer has the authority to arrest a person without a warrant if the officer has reasonable cause to believe that the person has committed *any* violation of the law in the officer's presence. Rule 5.5 states that "[t]he issuance of a citation in lieu of arrest or continued custody does not affect the authority of a law enforcement officer to conduct an otherwise lawful search or any other investi-

---

[1] The record reflects that the marijuana was kept in a box. In a footnote in his brief, appellant asserts that the marijuana was inside a black plastic bag when the exhibit was opened at the hearing. However, when we inspected the exhibit, there was no black plastic bag in evidence.

gative procedure incident to an arrest." Construing these rules together, the court held that where an officer has probable cause to arrest pursuant to Rule 4.1, he may validly conduct a search incident to arrest of either the person or the areas within the person's immediate control under Rule 5.5. Since the officer had the power to arrest Earl for a traffic violation, the court reasoned that the officer could lawfully conduct the search, without need of further justification.

■ ■ When we examine the facts of this case, we believe that the court's holding in *State v. Earl* is dispositive. Officer Malone initiated the stop because appellant turned off the road without signalling. Since the officer had the authority to arrest appellant for this traffic violation, he also had the authority to conduct a search as incident to an arrest. As a search incident to arrest, the police may search the passenger compartment of the automobile, and containers found within the passenger compartment may be searched whether they are opened or closed. *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995) (*citing New York v. Belton*, 453 U.S. 454 (1981)).

■ ■ Although appellant has argued that the stop was invalid because no actual traffic violation occurred, that is not the issue. The question of whether an officer has probable cause to make a traffic stop does not depend upon whether the defendant is actually guilty of the violation that was the basis for the stop. *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). All that is required is that the officer had probable cause to believe that a traffic violation had occurred. *Id.* Whether the defendant is actually guilty of the traffic violation is for a jury or court, and not an officer on the scene. *Id.* Arkansas Code Annotated § 27-51-403(a) (Repl. 1994) provides that "[n]o person shall turn a vehicle from a direct course upon a highway unless and until the movement can be made with reasonable safety and then only . . . after giving an appropriate signal in the manner provided in subsection (b) in the event any other vehicle may be affected by the movement." Subsection (b) requires that a signal of intention to turn right or left be given continuously during not less than one hundred feet traveled by the vehicle before turning. The record reflects that appellant made an abrupt turn without signalling to

nearby, oncoming traffic. We believe there was sufficient cause for the officer to believe that a violation of the statute had occurred.

We also reject appellant's argument that the stop was a pretext for a drug search. In *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994), the supreme court said that an ulterior motive does not in itself render an arrest pretextual when there is a valid overt reason to make the arrest. The court quoted an example from Professor LaFave to illustrate this point: "[I]f the police stop X's car for minor offense A, and they 'subjectively hoped to discover contraband during the stop' so as to establish serious offense B, the stop is nonetheless lawful if 'a reasonable officer would have made the stop in the absence of the invalid purpose.'" 1 Wayne R. LaFave, *Search and Seizure* § 1.4 at 22 (Supp. 1994). We also quoted this section of the professor's treatise in *Miller v. State*, 44 Ark. App. 112, 868 S.W.2d 510 (1993), a case in which a narcotics officer who discovered contraband during a traffic stop testified that he had stopped the appellant's vehicle in hopes that he would find drugs. In affirming, we wrote that police searches are to be tested under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved. We also observed that:

> The test is whether a "reasonable officer" would have made the traffic stop absent his ulterior motive. The Constitution does not prohibit officers assigned to work on particular types of offenses to refrain from arresting those who commit offenses outside the officers' area of specialty.

*Id.* at 116, 868 S.W.2d at 512. Applying the standard of objective reasonableness in the case at bar, we cannot conclude that the stop was invalid as a matter of pretext. *See also, e.g., Whren v. United States*, 517 U.S. 806 (1996).

Although Rules 4.1 and 5.5 were not urged as a basis to sustain the officer's actions at the trial level, we recognize that we can affirm a trial court if it reached the right result, but for a different reason. *Stewart v. State*, 59 Ark. App. 77, 953 S.W.2d 599 (1998). While we find no merit to appellant's contentions concerning Rule 14.1 and the plain-view exception, our affirmance

based on *State v. Earl, supra,* makes it unnecessary to further delve into those issues.

Affirmed.

CRABTREE, MEADS, JENNINGS, STROUD, and NEAL, JJ., agree.