Jose BARRIENTOS *v.* STATE of Arkansas

CA CR 00-279 39 S.W.3d 17

Court of Appeals of Arkansas
Division IV
Opinion delivered February 7, 2001

Hampton, Larkowski & Benca, by: Mark F. Hampton and Patrick J. Benca, for appellant.

Mark Pryor, Att'y Gen., by: Leslie Fisken, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Jose Barrientos was convicted by the trial court, sitting as trier of fact, of possession of methamphetamine with intent, for which he was sentenced to twenty years in the Arkansas Department of Correction. He raises five points on appeal: (1) that the police officer had no probable cause to stop his vehicle; (2) that even if the officer had probable cause to stop his vehicle, the stop exceeded the duration and scope of a proper investigation; (3) that the officer's drug dog was not sufficiently reliable to establish probable cause to search, and that the officer's use of "handler cues" was instrumental in getting the dog to "alert" at the rear of appellant's vehicle; (4) that the State did not meet its burden of proving by clear and positive evidence that appellant consented to the search of his vehicle, thus rendering the search unlawful; and (5) that the evidence was insufficient to show that appellant was aware the illegal drugs were in his vehicle. We find merit in Barrientos's first argument, and we reverse and remand.

The court below conducted a hearing on a motion by Barrientos to suppress methamphetamine that had been found in a hidden compartment of the gas tank in his car. The State presented evidence that on August 25, 1997, Barrientos was traveling cross-country on I-40 with Cruz Frias, who is his sister-in-law, and a child, Carol Barrientos. At about 2:30 a.m. he drove past Officers Joe Taylor and Chuck Townsend, who were parked in the median while working drug interdiction for the Conway Police Depart-

ment and patrolling with Taylor's drug dog, Prissy. Taylor testified that the officers followed Barrientos for almost five miles. During that time they noticed that the California license plate on his car did not expire until October of 1998, which Taylor thought to be unusual because that date was still fourteen months away and because all of the license plates that he had encountered during the past ten years had a one-year expiration date. He said that it occurred to him that the expiration date might be a mistake or that it might have been deliberately put there to "mislead" about the true expiration date of the vehicle. However, before stopping the car, he had the license checked; he learned that the expiration date was valid, that the vehicle was properly registered in California to a man named Jerry Lichtenberger, and that the car had not been reported stolen. Officer Taylor testified that as they followed Barrientos, he observed that the car was traveling in the right-hand lane and that it was weaving between the lines in its own lane. He said that he decided to stop Barrientos's car because he thought that the driver might be sleepy.

Taylor said that Barrientos's driver's license and the papers on the car were all in order, that Barrientos said that he had just bought the car from a man named Jerry with a "funny last name," but that Barrientos did not have any papers to show that a transaction had occurred between Jerry and himself. Taylor said that he asked Barrientos how long he had been driving and Barrientos answered that he had just started driving at the last town they passed through, but that he was unable to recall the name of that town. When Taylor asked him where he was coming from and where he was going, Barrientos replied that he was coming from California, that he was looking for antique cars to fix up and sell, and that he was going to the next state. Taylor testified that Barrientos was unable to name the next state. Taylor also testified that Barrientos said that he and his passengers had left Los Angeles on Saturday afternoon about 4:00 p.m., which Taylor estimated had been approximately thirty-nine hours earlier, and that this made Taylor suspicious because he did not think that Barrientos could have stopped and looked at many junk cars and driven from California to Conway in that length of time. Taylor said he also thought it was very odd that Barrientos would be looking for junk cars in a Lincoln Town Car that did not have a trailer hitch.

Officer Taylor testified that he then got Prissy out of the patrol car and walked her around Barrientos's car. He said that Prissy alerted at the right-rear tire of Barrientos's car, and when they circled the car again, she alerted on the trunk.

After conducting a search of the interior and trunk of the car and finding nothing, Taylor looked under the car and observed what appeared to be new straps and fresh undercoating on the gas tank. He then crawled beneath the car and tapped on the gas tank. He said that the tank sounded hollow on one side but solid on the other. Taylor said that he told Barrientos that he and his passengers were free to leave but that he was impounding the car to investigate further. Taylor said he gave Barrientos and his passengers the option of leaving afoot, driving the car to a location where the car would be searched, or being driven somewhere by Taylor. Barrientos and his passengers chose to stay with the car. They went to an old wrecker shop on Highway 64 where officers jacked up the car and removed the gas tank. Inside the gas tank was a false compartment that contained what laboratory tests later determined to be approximately twenty-two pounds of methamphetamine.

On this evidence the trial judge denied Barrientos's motion to suppress. Pursuant to an agreement that the evidence taken during the suppression hearing would also serve as evidence for a bench trial, the State's case on the merits was later concluded with the introduction of evidence relating to the state crime laboratory's analysis of the contraband that had been discovered in Barrientos's car. Barrientos rested without calling witnesses. Thereafter, the court announced his finding that Barrientos was guilty.

■ Barrientos's first argument on appeal is that Officer Taylor did not have probable cause to stop his car, and that the judge erred in refusing to suppress the evidence that, because of the unconstitutional stop, was fruit of the poisonous tree. When reviewing a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999); *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999); *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998). In making this determination, we view the evidence in the light most favorable to the appellee. *Fouse, supra; Langford, supra.*

 A police officer may conduct a traffic stop and detain a motorist only where the officer has probable cause to believe that a traffic violation has occurred. The relevant inquiry is whether the officer had probable cause to believe that a traffic violation was being committed or had occurred. *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998); *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997); *Kimery v. State*, 63 Ark. App. 52, 973 S.W.2d 836 (1998). Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994); *Johnson v. State*, 299 Ark. 223, 772 S.W.2d 322 (1989). In assessing the existence of probable cause, our review is liberal rather than strict. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997). All that is required is that the officer had probable cause to believe that a traffic violation had occurred; whether the defendant is actually guilty of the traffic violation is for a jury or a court to decide, and not an officer on the scene. *Burris, supra*; *State v. Jones*, 310 Ark. 585, 839 S.W.2d 184 (1992).

In *United States v. Miller*, 146 F.3d 274 (5th Cir. 1998), a deputy sheriff began to follow Miller's motor home near Amarillo, Texas, because it had no front license plate. From behind he could tell it had a temporary Colorado license plate. The deputy stopped Miller because, as he followed the motor home, he noticed that the left turn signal was on and that the motor home proceeded through an intersection, but neither turned left nor changed lanes. The Texas traffic code contained no provision prohibiting the driver of a motor vehicle that was displaying a turn signal from proceeding through an intersection without turning or changing lanes. Thus, the court found that there was no objective basis for probable cause to justify the deputy's stop of Miller's motor home.

Barrientos, contending that Officer Taylor had no probable cause to make the traffic stop, relies on Officer Taylor's admission that before he stopped the car he knew it was properly registered in California to Jerry Lichtenberger and was not stolen. Taylor also testified that he observed the vehicle weaving within its lane of traffic only, and that he knew this was not a traffic violation. Taylor's testimony was verified by Officer Townsend.

The State contends that the stop was lawful because Officer Taylor testified that he knew that a driver is supposed to "maintain a

straight direction of travel." Noting that Arkansas Code Annotated section 27-51-104(b)(6) (Repl. 1997) makes it unlawful for an individual to operate a vehicle "in such a manner which would cause a failure to maintain control," the State submits that weaving within one's own lane constitutes failing to maintain control. We disagree, as the State offers no convincing authority for its argument.

The State notes that an officer's stop of the defendant was upheld in *Piercefield v. State*, 316 Ark. 128, 871 S.W.2d 348 (1994). Piercefield was riding a motorcycle that was weaving between the centerline of the road and the shoulder, the hour was late, and the arresting officer was concerned that the driver might be driving while intoxicated. That case does not support the State's argument that a car weaving between the boundaries of its designated lane on a multi-lane highway, combined with an officer's concern that the driver might be sleepy, constitutes probable cause to stop.

The State also submits that Officer Taylor believed that the California tags were illegal and that his belief amounted to probable cause. That is a disingenuous argument because Officer Taylor admitted during his testimony at the suppression hearing that before stopping Barrientos's car, he had already checked and found the expiration date on the license to be valid. Furthermore, the State ignores the trial court's finding when ruling on the motion to suppress that Officer Taylor had already determined that the tags on the vehicle were in order and that, upon stopping Barrientos's car, he also had obtained paperwork to verify the information about the vehicle's ownership and registration and had satisfied himself that the vehicle was not stolen and the tags were not fictitious.

■ The trial court, although reaching the conclusion that probable cause existed for the stop of Barrientos's vehicle, described the evidence supporting probable cause as being "extremely thin." We hold that there was no basis for the court's finding of probable cause to stop Barrientos's vehicle, and that the court therefore erred in refusing to grant the motion to suppress. Consequently, we remand this case to the trial court with directions to suppress the evidence flowing from the unconstitutional stop. In view of our holding that there was no probable cause to make the stop, we need not consider the second, third, or fourth points, as they are concerned with the stop and resulting search.

 Although we hold that the trial court's failure to grant the motion to suppress evidence was trial error, we must also consider Barrientos's challenge to the sufficiency of the evidence in order to satisfy the constitutional requirments regarding double jeopardy. *See Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984). When reversal is sought both on the grounds of the insufficiency of the evidence and for other errors that may have occurred at trial, we may not reverse and remand for "trial error" without first having considered the sufficiency of the evidence. *Lanes v. State*, 53 Ark. App. 266, 922 S.W.2d 349 (1996) citing *Burks v. United States*, 437 U.S. 1 (1978), and *Harris v. State, supra.* When the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the appellee, considering only the evidence that tends to support the verdict, including, however, the evidence that was erroneously admitted. *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997); *Wilson v. State*, 320 Ark. 707, 898 S.W.2d 469 (1995); *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993); *Lanes v. State, supra.* The evidence, whether direct or circumstantial, must be of sufficient force that it will, with reasonable and material certainty and precision, compel a conclusion one way or another. *Kilpatrick v. State*, 322 Ark. 728, 912 S.W.2d 917 (1995). We do not weigh the evidence on one side against the other; we simply determine whether the evidence in support of the verdict is substantial. *Tisdale v. State*, 311 Ark. 220, 843 S.W.2d 803 (1992); *Salley v. State*, 303 Ark. 278, 796 S.W.2d 335 (1990). Neither do we pass on the credibility of the witnesses. That duty is left to the trier of fact. *Mann v. State*, 291 Ark 4, 722 S.W.2d 266 (1987).

In support of his argument that the evidence was insufficient to support his conviction, Barrientos relies on *United States v. Pace*, 922 F.2d 451 (8th Cir. 1990). Philip Pace was stopped for speeding near Springfield, Missouri, in the early morning hours; he had no driver's license or vehicle registration; and he appeared nervous. A computer check revealed that Pace's driver's license had been suspended and that the car was not owned by either Pace or Thomas Mason, the other occupant of the car. Both occupants consented to a search of the vehicle, which led to the discovery of two duffel bags in the floor board of the back seat and a duffel bag and suitcase in the cargo area of the station wagon containing almost 200 pounds of what appeared to be cocaine.

The view of the cargo area was concealed from the rest of the vehicle. Pace's travel bag was in the back seat, having been placed there by Mason. Pace had been in the car for a day and a half, and had been asleep in the front seat when he was not driving. There was no evidence that Pace, who had been hired by Mason to assist in driving the station wagon from Los Angeles to Chicago, knew what was inside the duffel bags or suitcase. On appeal from Pace's conviction for possession of cocaine with intention to distribute, the Eighth Circuit Court of Appeals reversed and dismissed, holding that, in the absence of evidence that Pace knew the contents of Mason's duffel bags and suitcase, the evidence was insufficient to justify a reasonable inference that Pace knew he was driving a car full of cocaine.

■ Here, the trial court found *Pace* to be distinguishable, stating that *Pace* might apply to Ms. Frias (the other adult occupant of his car) if she were being tried for possession of the methamphetamine. The trial court noted that since Barrientos admitted that he had recently purchased the car from a man named Jerry with a "funny last name," the court would have to conclude either that Barrientos was working in conjunction with Jerry Lichtenberger to transport and distribute the drug or that Barrientos was the innocent purchaser of a vehicle from a man who had forgotten that there were twenty pounds of methamphetamine in the gas tank, a scenario the court found implausible. In light of the testimony, as summarized above, and the laboratory analysis of the twenty-two pounds of methamphetamine found inside the gas tank of the car driven by Barrientos, we hold that there was substantial evidence to support the conclusion and that the trial court did not err in denying Barrientos's motion for directed verdict[1].

Reversed and remanded for further proceedings consistent with this opinion.

STROUD, C.J., and JENNINGS, J., agree.

---

[1] The State argues that Barrientos did not preserve his sufficiency of the evidence argument because of a lack of specificity in his motion for directed verdict, but we find that the motion was sufficiently specific to preserve the argument as Barrientos made it clear that his motion was based upon United States v. Pace, 922 F.2d 451 (8th Cir. 1990).