# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3362

_____

| | |
|---|---|
| Frank Robinson, | * |
| | * |
| Appellant, | * |
| | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Arkansas. |
| White County, Arkansas; Bob Parish, | * |
| individually and in his official capacity | * |
| as County Judge of White County, | * |
| Arkansas; Pat Garrett, individually and | * |
| in his official capacity as Sheriff of | * |
| White County, Arkansas, | * |
| | * |
| Appellees. | * |

_____

Submitted: March 17, 2006
Filed: July 3, 2006

_____

Before WOLLMAN and RILEY, Circuit Judges, and ROSENBAUM,[1] District
    Judge.

_____

RILEY, Circuit Judge.

    Frank Robinson (Robinson) appeals the district court's grant of summary
judgment to White County Judge Bob Parish (Judge Parish) and Sheriff Pat Garrett

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District
Court for the District of Minnesota, sitting by designation.

(Sheriff Garrett) (collectively, the appellees) in Robinson's action under 42 U.S.C. § 1983 for unlawful arrest following the collapse of a bridge Robinson drove across in a loaded eighteen-wheel truck. Robinson alleged claims against the appellees in their individual and official capacities, a civil conspiracy claim, and several state law claims. The district court granted summary judgment to the appellees based on qualified immunity. Robinson appeals. We reverse the district court's order with respect to the individual capacity and state law claims against Sheriff Garrett, and we otherwise affirm.

## I. BACKGROUND

On January 6, 2003, Robinson was driving a loaded Home Depot truck en route to a delivery when he encountered an old single lane steel framed wooden topped bridge in White County, Arkansas. Ordinarily a weight limit sign was posted at the bridge, but on that day the sign was missing. Robinson was unfamiliar with this stretch of road and with this bridge. As Robinson drove across, the bridge collapsed, with the truck and bridge falling into the creek, injuring Robinson.

White County Sheriff's Department Sergeant Terry Sablotny (Sergeant Sablotny) and Deputy Andres Mariani (Deputy Mariani), among others, responded to the accident. Deputy Mariani found the weight limit sign lying obscured in the grass. At some point, Judge Parish was notified of the accident. Judge Parish, having not visited the accident scene, concluded Robinson "either broke [the] weight limit law or . . . [did] something reckless to cause that bridge to fall." Judge Parish spoke to the White County Sheriff's Department dispatcher and told the dispatcher to ask Sheriff Garrett to issue Robinson a citation. Judge Parish also called Sheriff Garrett directly, telling Sheriff Garrett to "[p]ut [Robinson] in jail."

Sheriff Garrett telephoned Sergeant Sablotny and informed him Judge Parish was mad and wanted Robinson put in jail and to post bond. Not having visited the accident scene, Sheriff Garrett instructed Sergeant Sablotny to issue a citation. When

Sergeant Sablotny told Sheriff Garrett the weight limit posting was missing (so he did not know what Robinson should be cited for), Sheriff Garrett did not change his instruction to issue a citation. In a subsequent telephone conversation, after checking with a state trooper, Sergeant Sablotny told Sheriff Garrett the "closest thing" he could find to a statute Robinson violated was Ark. Code Ann. § 27-51-104, which prohibits "careless driving." Sheriff Garrett responded to Sergeant Sablotny, "Works for me."

Robinson was arrested for careless driving and released after posting a $150 bond. In June 2003, Robinson was acquitted on the careless driving charge. The presiding district court judge of Searcy County, Missouri, testified, by affidavit, the only witness at the citation hearing, Deputy Mariani, testified: "[T]he weight limit sign for the bridge was not up at the time of the accident, [Deputy] Mariani did not believe that Robinson had broken any law, and [Deputy] Mariani issued a citation to Robinson only because he had been instructed to do so."

Robinson later sued White County, Judge Parish, and Sheriff Garrett under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth and Fourteenth Amendments, alleging the appellees conspired to violate Robinson's right to be free from unlawful arrest, and alleging various state law claims. The appellees moved for summary judgment based on the "objective reasonableness" arrest standard under the Fourth Amendment. The district court denied the motion. The appellees then moved for reconsideration and filed an amended summary judgment motion based on qualified immunity. The district court granted summary judgment on all of Robinson's claims. Robinson appeals.

## II.    DISCUSSION

We review de novo a district court's grant of summary judgment, applying the same standards as the district court. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995). We will affirm the summary judgment if the evidence, viewed in the light most favorable to Robinson, demonstrates there is no genuine issue

as to any material fact and the appellees are entitled to judgment as a matter of law. Id. There is no genuine issue of material fact if the evidence is such that no reasonable jury could return a verdict for Robinson. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### A. Sheriff Garrett's Qualified Immunity for Individual Capacity Claim

We first address Robinson's individual capacity claim against Sheriff Garrett. As recited in Wright v. Rolette County, 417 F.3d 879, 884 (8th Cir. 2005) (internal quotations and citations omitted), cert. denied, 126 S. Ct. 1338 (2006), the test for qualified immunity is:

> Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known. We analyze qualified immunity issue [sic] in two steps. First, we ask whether the facts as asserted by the plaintiff show the officer's conduct violated a constitutional right. If the answer is no, we grant qualified immunity. If the answer is yes, we go on to determine whether the right was clearly established. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

### 1. Violation of a Constitutional Right

The appellees argue Sheriff Garrett's conduct did not violate Robinson's constitutional right because a reasonable officer at the scene would have believed he had probable cause to arrest Robinson. See Malley v. Briggs, 475 U.S. 335, 344-45 (1986); Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989). In determining whether there was arguable probable cause to arrest Robinson, we start at square one: the statute cited for Robinson's arrest. Sheriff Garrett ordered Robinson arrested for violating Ark. Code Ann. § 27-51-104, the Arkansas "careless driving" statute, which states in relevant part,

(a) It shall be unlawful for any person to drive or operate any vehicle in such a careless manner as to evidence . . . a failure to maintain proper control.

(b) It shall be unlawful for any person to operate or drive any vehicle . . . in violation of the following prohibited acts:

. . . .

(4) Driving too close to, or colliding with . . . fixtures, . . . or objects adjacent to the public thoroughfares;

. . . .

(6) To operate any vehicle in such a manner which would cause a failure to maintain control;

. . . .

(8) To operate a vehicle in any manner, when the driver is inattentive, and such inattention is not reasonable and prudent in maintaining vehicular control.

The appellees first argue a reasonable officer would have had probable cause to believe Robinson "collided with . . . objects adjacent" to the road because Robinson's truck was lying among the bridge's remains, thus (1) "colliding" with the bridge after the collapse, or (2) evidencing a collision causing the collapse. See id. § (b)(4). We disagree and find the appellees' proposed statutory reading does not square with common sense traffic law enforcement practice. First, under the appellees' proposed statutory reading, Arkansas drivers had best beware, for an innocent victim could be cited for careless driving if, as the result of another driver negligently colliding with the victim's car, the victim's car careens into another object. This is obviously an absurd result. No reasonable officer would cite such a victim for careless driving, just as no reasonable officer would view the "careless driving" statute as prohibiting collision with a bridge that has just collapsed from underneath the vehicle. Second, no evidence, or reasonable inference from the evidence, indicates Robinson's truck struck the bridge and caused the collapse.

The appellees alternatively argue a reasonable officer, given the results of the bridge collapse, would have had probable cause to believe Robinson was inattentive. See id. § (b)(8). We again disagree, as the officers had no evidence Robinson was inattentive.

Finally, the appellees argue a reasonable officer would have had probable cause to believe Robinson failed to maintain proper control or operated his truck in a manner causing a failure to maintain proper control. See id. § (a), (b)(6). The appellees' purported ratiocination is that Robinson operated a very heavy vehicle, the sheer weight of which caused the bridge collapse, which in turn caused Robinson to lose control of the vehicle, hence Robinson operated the truck in a manner causing a loss of control. We have no difficulty rejecting the appellees' circuitous argument foursquare. Again, under the appellees' construction, innocent Arkansas drivers could be cited for loss of control following a collision caused by persons or events other than the driver. No reasonable officer would apply the statute in that manner. Finally, our conclusion is further supported by the event chronology preceding Robinson's arrest, which evidences Sheriff Garrett's unwavering order to arrest Robinson *for something*, despite Sheriff Garrett having not visited the accident scene and not being advised by his officers at the scene that any evidence supported a traffic citation.

We recognize at the time of the arrest the Arkansas courts had not yet fully defined the conduct that would violate Ark. Code Ann. § 27-51-104, thus one might argue "[i]n the absence of any judicial interpretation to the contrary, a reasonable officer could have concluded" Robinson's actions warranted arrest for careless driving. Cf. Gorra, 880 F.2d at 98. Such an argument would fail. First, the Arkansas decision closest on point supports our conclusion. See Barrientos v. State, 39 S.W.3d 17, 22 (Ark. Ct. App. 2001) (holding Ark. Code Ann. § 27-51-104(b)(6) did not support a finding of probable cause to stop a vehicle for weaving within own lane). Second, we do not believe the absence of interpretation by state courts grants imprimatur to a statutory reading so contrary to common sense.

-6-

Because no reasonable police officer would have read the Arkansas "careless driving" statute in a manner to believe probable cause arguably existed to arrest Robinson, we hold, taking the evidence in the light most favorable to Robinson, Sheriff Garrett, who ordered Robinson's arrest, violated Robinson's constitutional right to be free from unlawful arrest.

### 2.    Clearly Established Right

Because we have concluded Sheriff Garrett violated Robinson's constitutional right to be free from unlawful arrest, we next determine whether the right was clearly established. "For a right to be considered clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1103 (8th Cir. 2004) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The appellees argue Robinson's right was not clearly established because the interpretation of Ark. Code Ann. § 27-51-104 we recognized supra was not sufficiently clear at the time of Robinson's arrest. We disagree. Given the record before us, we conclude a reasonable officer would have known arresting Robinson for careless driving after a bridge, missing its weight limit posting, fell out from under Robinson's truck constituted a violation of the Fourth and Fourteenth Amendments.

In sum, we hold, taking the evidence in the light most favorable to Robinson, Sheriff Garrett violated Robinson's constitutional right to be free from unlawful arrest, and that right was clearly established at the time of Robinson's arrest. We therefore reverse the district court's grant of qualified immunity to Sheriff Garrett on Robinson's individual capacity § 1983 claim against Sheriff Garrett.

### B.    Judge Parish's Qualified Immunity for Individual Capacity Claim

We next address Robinson's individual capacity claim against Judge Parish. Robinson claims Judge Parish directly participated in the constitutional violation

against Robinson, thus Judge Parish is liable just as Sheriff Garrett, who actually ordered Robinson's arrest.

As White County Judge, Judge Parish served as the "principal executive officer of the county." See Ark. Code Ann. § 14-14-703(a)(1). His powers included "operat[ing] the system of county roads," see Ark. Const. Amend. 55, § 3, and presiding over (but not voting in) the body that fixes the compensation of White County officers, including Sheriff Garrett, see Ark. Const. Amend. 55, §§ 3, 5; Ark. Code Ann. § 14-14-502(b)(2)(A)(i). However, while titled Judge, Judge Parish had no judicial duties, see Ark. Code Ann. § 14-14-703(a)(1), and in particular, he had no authority, discretionary or otherwise, to order Robinson arrested, see Ark. Const. Amend. 55, § 3. Without that authority, we hold as a matter of law Judge Parish could not have directly participated, under color of state law, in Robinson's unlawful arrest. See Hafer v. Melo, 502 U.S. 21, 25-26 (1991). Because Judge Parish could not have violated Robinson's constitutional right, he is entitled to qualified immunity. See Wright, 417 F.3d at 884.

Although Judge Parish could not, within the scope of his authority, violate Robinson's right, "[w]hen government officials engage in consci[ence]-shocking, egregious behavior that is clearly outside the scope of their discretionary authority, they are not entitled to qualified immunity under section 1983." Moran v. Clarke, 359 F.3d 1058, 1060 (8th Cir. 2004). The evidence against Judge Parish–that he requested Robinson be cited without visiting the accident scene or fully investigating the facts–does not rise to the level of conscience-shocking. It is understandable the official overseeing county roads would want the individual who may have caused a bridge collapse in his county to be held accountable.

We therefore affirm the district court with respect to Robinson's individual capacity claim against Judge Parish.

## C. Conspiracy Claim

Robinson alleges Judge Parish and Sheriff Garrett entered into a civil conspiracy to violate Robinson's right to be free from unlawful arrest. Namely, Judge Parish asked Sheriff Garrett to issue Robinson a citation and "[p]ut him in jail," and Sheriff Garrett did so.

To establish a civil conspiracy, Robinson "must show five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1498 (8th Cir. 1997). The issue here is the fourth element: whether Judge Parish's act of requesting Sheriff Garrett to arrest Robinson constitutes an overt act or participation in an overt act in furtherance of a conspiracy to violate Robinson's right.

We hold as a matter of law no reasonable jury could find the existence of a civil conspiracy here because Judge Parish's request, backed by no actual authority and which Sheriff Garrett was not required to follow, does not constitute an overt act for which Judge Parish could be liable. The unlawful overt act, an unconstitutional arrest, was solely within Sheriff Garrett's authority and was his decision alone. As we stated in Young v. Harrison, 284 F.3d 863 (8th Cir. 2002) (per curiam), "[a] private person does not conspire with a state official merely by invoking an exercise of the state official's authority." Id. at 870 (quoting Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir. 1980)). While Judge Parish is not truly a "private person" in this case, his lack of authority over Sheriff Garrett, just like a private person's lack of authority over the police, makes Young persuasive. Furthermore, Robinson offers no evidence Judge Parish's request was "tantamount to substituting the judgment of [Judge Parish] for that of the police." Cf. id. (quoting Alexis v. McDonald's Rest., 67 F.3d 341, 352 (1st Cir. 1995)).

We therefore affirm the district court with respect to Robinson's civil conspiracy claim against the appellees.

### D. Official Capacity Claims

We next address Robinson's official capacity claims. Robinson claims his arrest amounted to an "official policy" by the White County Sheriff's Department and therefore White County is liable under § 1983 for the official acts of Judge Parish and Sheriff Garrett. Robinson's claims are tantamount to claims against White County. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). A municipality may be liable under § 1983 for the unconstitutional acts of its employees if some "municipal 'policy' or 'custom'" was the moving force behind the constitutional violation. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997).

#### 1. Judge Parish

Because Judge Parish did not undertake any unlawful acts toward Robinson, White County cannot be held liable under § 1983 for any acts taken by Judge Parish. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978); McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

#### 2. Sheriff Garrett

Robinson argues Sheriff Garrett's single act of having Robinson arrested constitutes an "official policy" of White County. Although the Supreme Court has stated "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), those unique circumstances do not exist here. There is no evidence in the record, beyond Robinson's isolated arrest, White County had any policy, official or otherwise, of unlawfully arresting persons for careless driving. Cf. Veneklase v. City of Fargo, 248 F.3d 738, 748 (8th Cir. 2001) (en banc) (per curiam); Morton v. City of Little Rock, 934 F.2d 180, 183 (8th Cir. 1991); see also Pembaur, 475 U.S. at 481 ("[N]ot every decision by municipal officers automatically subjects

the municipality to § 1983 liability."). "We cannot infer the existence of an unconstitutional [county] policy . . . from this single occurrence." <u>Wedemeier v. City of Ballwin</u>, 931 F.2d 24, 26 (8th Cir. 1991) (citing <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 821 (plurality), 830-31 (Brennan, J., concurring) (1985)) (involving claim of municipal liability for single incident of unlawful arrest).

We therefore affirm the district court with respect to Robinson's official capacity claims against the appellees.

### E.    State Law Claims

Finally, we address Robinson's state law claims. The appellees moved for summary judgment on Robinson's state law claims, only arguing the claims were "irrelevant" because the appellees were entitled to qualified immunity. The appellees made no alternative argument in support of summary judgment based on the merits of the state law claims.

Under <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), "[t]he party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact." <u>Uhiren v. Bristol-Myers Squibb Co., Inc.</u>, 346 F.3d 824, 827 (8th Cir. 2003) (citing <u>Celotex</u>, 477 U.S. at 323). Only when the movant makes such a showing does the burden shift to the non-movant to "present affirmative evidence showing that a genuine issue of material fact exists." <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 256-57).

In this case, the appellees failed to identify any grounds beyond qualified immunity demonstrating the absence of genuine issues of material fact regarding Robinson's state law claims. But as we held <u>supra</u>, Sheriff Garrett is not entitled to qualified immunity for Robinson's unlawful arrest. Thus, the appellees have presented no valid grounds upon which summary judgment can be granted on Robinson's state law claims against Sheriff Garrett. We therefore reverse the district court's order granting summary judgment to Sheriff Garrett on Robinson's state law

claims. However, because Judge Parish did not undertake any unlawful acts toward Robinson, we affirm the district court's order granting Judge Parish summary judgment on Robinson's state law claims.

## III. CONCLUSION

For the reasons stated, we reverse the district court's order granting summary judgment to Sheriff Garrett on Robinson's individual capacity and state law claims. We affirm the district court with respect to the remaining claims against Sheriff Garrett and all claims against Judge Parish.

_____